Pelham G. Wodehouse v. Commissioner.
Pelham v. Commissioner
Docket No. 9887.
United States Tax Court
1950 Tax Ct. Memo LEXIS 155; 9 T.C.M. (CCH) 559; T.C.M. (RIA) 50161; June 30, 1950
Watson Washburn, Esq., 36 West 44th St., New York 18, N. Y., and Royal E. Mygatt, Esq., for the petitioner. William B Springer, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined *156 deficiencies in income tax and 25 per cent penalties as follows: Year
Deficiency
Penalty
Total
1921
$5,005.57
$1,251.39
$6,256.96
1922
5,771.34
1,442.84
7,214.18
The notice of deficiency was mailed to petitioner on July 27, 1945. The determination has been made under section 276 (a) of the Internal Revenue Code which provides inter alia that in case of failure to file an income tax return, tax may be assessed at any time. The respondent has proceeded upon the belief that no income tax returns for the years 1921 and 1922 were filed for or by the petitioner. Unless the respondent's understanding is correct, assessment of deficiencies in tax is barred by the statute of limitations. See section 275 (a), Internal Revenue Code; and section 277 (a), Revenue Act of 1924. The primary question for decision is whether petitioner's income tax returns for 1921 and 1922 were filed with any collector of internal revenue. Petitioner contends that the returns in question were filed. Findings of Fact The petitioner is a professional writer of short stories, serial stories, plays, and other literary works, from the *157 sale of which, income is derived. He is a subject of Great Britain, and he was a nonresident alien during the years 1921 and 1922. Petitioner was in England throughout the year 1921. During the period 1917 through 1920, he visited the United States at various times. He came to the United States for a temporary visit of about three weeks in the spring of 1922. Later, in September of 1922, he returned to the United States, remaining until the autumn of 1923 when he returned to England. During this sojourn in the United States, the petitioner lived at East Hampton, Long Island, New York. During 1921 and 1922, and for several years prior, Paul R. Reynolds was petitioner's literary agent for arranging sales of his stories and serials to magazines and book publishers, and the American Play Company was his dramatic agent for arranging sales of any plays which he wrote. John H. Rumsey is the president of American Play Company. In about 1917, petitioner appointed Rumsey as his agent to make and to file his income tax returns and to look after matters relating to his income tax liability; and Rumsey acted as petitioner's agent in these matters in subsequent years, including 1921 and 1922. *158 At various times, Rumsey was assisted by a friend of petitioner, R.J.B. Denby, in preparing petitioner's income tax returns. Petitioner received income from sources within the United States during 1921 and 1922 from sales of stories and royalties on books. Reynolds withheld tax on the taxable income and filed withholding returns. Rumsey kept accounting records of receipts and disbursements for petitioner's account. The ledger sheet records of the account in the name of petitioner showing receipts and disbursements for the years 1920, 1921, 1922, and 1923 are still in existence, and were received in evidence in this proceeding. These ledger sheets contain handwritten entries in ink of payments of income tax which were made by Rumsey or someone in his office for petitioner to a collector of internal revenue. The entries were made by Rumsey's bookkeeper, James Hart, deceased. James Hart was Rumsey's bookkeeper from October 1, 1914, until April, 1937. He died in March, 1943. The account of petitioner which was kept by Rumsey contains entries of payments of taxes for petitioner to a collector of internal revenue as follows: June 16, 1919
$2,070.42
March 24, 1923
430.00
March 31, 1923
1,781.22
April 12, 1923
4,739.72
August 23, 1923
1,267.24
*159 All of the foregoing payments were payments of income tax reported on returns of petitioner. None of the payments were for withholding tax. Petitioner filed income tax returns either himself or through Rumsey, his agent, for the years 1917, 1918, 1919, and 1920, which respondent does not deny. Rumsey moved his offices to smaller quarters in May, 1938. At that time he destroyed a great many of his records, cancelled checks, copies of income tax returns, and correspondence for years prior to 1930 or 1931, including copies of income tax returns of petitioner, and cancelled checks given in payment of petitioner's income tax. When Rumsey destroyed accumulated records in 1938, he understood that all income tax liability of petitioner for the years 1917 through 1922 had been settled and disposed of. In 1923, the Treasury Department raised questions about petitioner's income tax liability for prior years including 1922, upon the basis of a field audit. Rumsey and Denby had several conferences with an agent of the Department in the summer of 1923, which culminated in the payment of deficiencies for years up to 1923 in a total amount in excess of one thousand dollars. Denby understood *160 that the payments disposed of petitioner's income tax liability for years prior to 1923. Rumsey received a letter from a Washington office of the Bureau of Internal Revenue in 1923 in connection with these payments, but the letter cannot be found. It may have been destroyed in 1938, along with other papers disposed of when Rumsey moved his office. Watson Washburn, petitioner's attorney, with his partner Halsey Malone, deceased, represented petitioner in the spring of 1933, when petitioner's income tax liability for years beginning with 1926 was the subject of a field audit. During the course of conferences with agents of the Treasury Department, Washburn inquired into the matter of whether income tax returns had been filed for petitioner for several years prior to 1926, and he was advised by Rumsey that returns had been filed for years including 1921 and 1922. He was advised by Denby that settlement had been made of and deficiencies paid in 1923 on petitioner's income tax liability up to 1923. Washburn, at the time of the investigation by the Treasury Department in 1933, was informed by revenue agents that they were unable to find any record of the filing of income tax returns *161 of petitioner subsequent to 1924. The investigation continued for three years, and from time to time Washburn held conferences with agents about petitioner's income tax returns and his liability for income tax. During these conferences, the agents did not contend that returns had not been filed for years prior to 1925. Washburn made an office memorandum about the tax matters he was working on for petitioner in which he summarized the points at issue. Washburn's office memorandum stated, in part, the following: "With regard to the returns for the years prior to 1932, the attorneys and the federal auditors first endeavored to ascertain what was the last year for which a return was filed on behalf of Mr. and Mrs. Wodehouse. Mr. Wodehouse, who had relied on American agents to attend to his American tax matters, believed a return had been filed in 1925, but the attorneys and the auditors could not find proof that any return (other than withholding returns) was filed after 1924. Accordingly, it was agreed that the proper dates of liability should be fixed for the years 1925 to 1931, inclusive." Income tax returns and records of payments of taxes for the years including 1921 through 1923 *162 were destroyed by the Treasury Department under authorization of Congress to destroy old records. The authorization was given as of February 17, 1930, to make destruction on November 15, 1930, of income tax returns for the years 1913 to 1923. Income tax returns for years including 1921 and 1922 were destroyed by the Commissioner of Internal Revenue shortly after November, 1930. Any papers and records of audits which were attached to returns were destroyed, also. In July, 1946, card records which were kept in Washington of income tax returns and tax payments for years including 1921 and 1922 were destroyed by the Commissioner, as well as special correspondence relating to allegedly delinquent tax returns for the years 1921 and 1922. Personal income tax returns which report income in excess of $5,000 are forwarded to Washington from the offices of the various collectors, in due course, where they are held until they are destroyed pursuant to authorization. For the years 1921 and 1922, no distinction was made, in the keeping of records and tax returns, between the returns of resident citizens and nonresident aliens. The various collectors of internal revenue keep records of returns *163 which are filed in their offices but the returns themselves are sent to the Bureau of Internal Revenue in Washington. The Bureau in Washington makes its own card records of returns received. The card records of the Bureau in the Washington offices of returns filed for years including 1921 and 1922 have been destroyed. They were destroyed in 1946. Withholding tax returns were audited in Washington. Withholding tax returns, filed by agents, listed the names of nonresident aliens for whom tax had been withheld. If some question was raised about the income tax returns of any nonresident alien, or if claim for refund was filed by or for a nonresident alien, some record was made in the division in Washington which held the withholding tax returns. When tax returns were destroyed in Washington, returns were destroyed for years for which collection of taxes was barred by the statute of limitations. Certain records and returns were not destroyed in 1930, but were held for various reasons. Such returns and records were destroyed, however, in July, 1946. The petitioner has filed with the respondent his election to claim the benefit of the Anglo-American Tax Treaty. On July 27, 1945, the *164 respondent mailed a notice of deficiency to the petitioner for the years 1921 and 1922. Income tax returns for the years 1921 and 1922 were filed for petitioner. Opinion The chief question is whether income tax returns of petitioner for the years 1921 and 1922 were filed. If returns were filed, the deficiencies which the respondent has determined are barred by the statute of limitations prescribed in section 277 (a) of the 1924 Revenue Act and in section 275 (a) of the Internal Revenue Code. It has been found as a fact that income tax returns for 1921 and 1922 were filed for petitioner. This finding of fact is made upon the entire record in this proceeding, bearing in mind the difficult task which petitioner has of proving facts after approximately 25 years. Petitioner called as witnesses the two persons who handled his business affairs and tax matters during the years in question, and the attorney he had retained at some time close to the year 1933 to represent him in conferences with agents of the Treasury Department. Rumsey and Denby testified that, to the best of their knowledge, they had filed income tax returns for petitioner for the years 1921 *165 and 1922. In addition, they testified that during the summer of 1923 they reached a settlement with agents of the Bureau of Internal Revenue in respect to petitioner's income tax liability for years prior to 1923. The attorney testified that agents of the Treasury were satisfied in 1933 that returns had been filed for petitioner for years prior to 1925. There is no reason to disbelieve the testimony of these witnesses. In addition to their testimony, there are bookkeeping entries in the account of petitioner kept by Rumsey which show that income tax payments were made for petitioner. The entries were offered to prove that payments were made of petitioner's income taxes for 1921 and 1922, and we are satisfied that they were. The reasonable conclusion to be drawn is, therefore, that income tax returns were filed for petitioner for 1921 and 1922. It is held that the deficiencies asserted for 1921 and 1922 are barred by the statute of limitations. Decision will be entered for the petitioner.